**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
PECOS DIVISION**

| | | |
|---|---|---|
| **LESLIE ROBERT BURK,**<br>**No. 32634380,**<br>　　　　　*Plaintiff,*<br><br>**v.**<br><br>**LASALLE CORRECTIONS V, LLC;**<br>**et al.,**<br>　　　　　*Defendants.* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **PE:24-CV-00054-DC-DF** |

## REPORT AND RECOMMENDATION OF THE U.S. MAGISTRATE JUDGE

BEFORE THE COURT is Defendants LaSalle Corrections V, LLC ("LaSalle") and

Mrs. Padilla's ("Padilla") Motion to Dismiss. (Doc. 61). The Court also considers

Plaintiff Leslie Robert Burk's ("Burk") claims against Warden Parker, LT. Castro, Lt.

Herrera, Assistant Warden Ayala, 9 John Does, Assistant Warden Valdez, Billy

McConnell, Michael K. Dean, Mrs. Sathoff, Elizabeth Javalera, Mrs. Penafiel,[1] Lorena

Quinones, Mrs. Penalosa, Hayden Saenz, Mrs. Muella, Mrs. Ramirez, Unnamed

Director of Kitchen Operations, Lt. Sierra, Gang Intelligence – Castro, Sgt. Cervantes,

Sgt. Rodreguez, Sgt. DeLara, and Captain Carreon (collectively "Individual

Defendants"). This case is before the Court through a Standing Order pursuant to

28 U.S.C. § 636 Appendix C of the Local Court Rules for the Assignment of Duties to

United States Magistrate Judges. After due consideration, the Court **RECOMMENDS**

that LaSalle and Padilla's Motion to Dismiss be **GRANTED** and that Burk's claims

---

1. In their Motion to Dismiss, LaSalle claims Burk misspelled Mrs. Penafiel as "Mrs. Penafill" and Mrs. Muella as "Mrs. Muala." (Doc. 61 at 38 n.29). The Court will refer to them exclusively as Mrs. Penafiel and Mrs. Muella.

against LaSalle, Padilla, and Individual Defendants be **DISMISSED WITH PREJUDICE**.

## BACKGROUND

Burk's claims involve multiple incidents from his time in detention at the West Texas Detention Facility ("WTDF"). (Doc. 1). Burk was a federal detainee at the WTDF. (Docs. 1 at 14; 17 at 24–25). Burk's original Complaint was difficult to decipher. (Doc. 1). The Court ordered Burk to clarify his claims several times. (Docs. 14, 16, 29, 30). Synthesizing his Complaint, subsequent addendums, questionnaire responses, and more definite statements, it appears[2] Burk's civil rights claims are brought for excessive force (Docs. 1 at 15–21, 25–26; 17 at 15; 26 at 1), the failure of staff to provide medical care (Doc. 17 at 13, 15), interference with his mail and access to court (Doc. 1 at 8, 40–41), failure-to-report (Doc. 1 at 14), and missed meals (Doc. 23 at 1).

Defendants Hudspeth County, LaSalle, Padilla, and United States of America have appeared in this case and filed Motions to Dismiss. (Docs. 61, 69, 90). The majority of Individual Defendants remain unserved and have not filed appearances. (Doc. 61 at 43). Burk was shuffled between facilities and initially unable to file a response to LaSalle and Padilla's Motion to Dismiss. (Doc. 83 at 1). Burk eventually filed his Response[3] on November 25, 2025. (Doc. 89 at 6). This matter is thus ripe for adjudication.

---

2. Burk also alludes to violations of equal protection and a conspiracy, but his allegations are entirely conclusory and to the extent these claims are brought they should be dismissed. (Doc. 1 at 8) ("I was also denied equal protection of the laws under the 14th Amendment by all parties at the WDTF too!"); *id.* at 14 ("This is classic collusion and conspiracy!").

3. The Court was initially unwilling to construe this filing as Burk's Response because he titled it as a Response to the Court's Show Cause Order and not a Response to LaSalle and Padilla's Motion to

## LEGAL STANDARD

### I.     Judicial Screening

A court must dismiss an *In Forma Pauperis* ("IFP") proceeding pursuant to 28 U.S.C. § 1915(e) if the court determines it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *Davis v. Lumpkin*, 35 F.4th 958, 962 (5th Cir. 2022) (citing § 1915(e)(2)(B)(i), (ii)). "[T]he Court may *sua sponte* dismiss on these grounds even without serving the defendants." *Walters v. LaSalle Corrs.*, No. 22-CV-35, 2022 WL 2240467, at *4 (W.D. Tex. June 21, 2022) (citing *Wilson v. Barrientos*, 926 F.2d 480, 482 (5th Cir. 1991)).

An action is frivolous where there is no arguable legal basis for the claim. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges a violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (internal quotations and citation omitted). "To determine whether an [IFP] complaint fails to state a claim on which relief may be granted, courts engage in the same analysis as when ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Walters*, 2022 WL 2240467, at *4 (citing *Davis*, 35 F.4th at 962).

---

Dismiss. (Doc. 89 at 1). But Burk's deadline to file a Response passed over a month ago (Doc. 83 at 2), and the Court has confirmation of his receipt of the Motion to Dismiss and the Order requiring him to respond. (Doc. 95). Burk, however, has not filed anything else that resembles a response to the Motion to Dismiss. Accordingly, the Court will construe his November 25 filing as his Response to the Motion to Dismiss. (Doc. 89).

## II.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Dismissal is appropriate if a complaint offers merely "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013), *cert. denied*, 572 U.S. 1087 (2014) (quoting *Ashcroft*, 556 U.S. at 678). The court accepts all facts as true and construes them in the light most favorable to plaintiff at this stage. *Fernandez-Montes v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993).

When reviewing a *pro se* plaintiff's complaint, the court must construe the plaintiff's allegations liberally, holding the plaintiff to less stringent pleading standards than those applicable to lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Even so, a plaintiff's *pro se* status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets." *Farguson v. MBank Hous., N.A.*, 808 F.2d 358, 359 (5th Cir. 1986).

## DISCUSSION

Burk's constitutional claims against LaSalle, Padilla, and Individual Defendants should be dismissed. The Court should consider Burk's claims against Padilla and Individual Defendants concurrently[4] because the rationale for dismissing Padilla also applies to Individual Defendants as current and former employees of LaSalle. (Doc. 61 at 34) (citing Doc. 1 at 1–2) ("All the individual defendants, including Mrs. Padilla, are private employees."); (Doc. 17 at 11). Burk's claims against Padilla and Individual Defendants should be analyzed under *Bivens* and dismissed per *Minneci v. Pollard*, 565 U.S. 118 (2012).[5] Burk's claims against LaSalle should also be dismissed per *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001). To the extent Burk brings state-law claims, the Court should decline to exercise supplemental jurisdiction. (Doc. 17 at 7–8). And finally, this Court should dismiss Burk's claims with prejudice and not grant him leave to amend his Complaint because Burk has already pleaded his best case.

## I.      Constitutional Claims Against Padilla and Individual Defendants

It is unclear from Burk's Complaint whether he brings his constitutional claims under 42 U.S.C. § 1983 or *Bivens*. (Docs. 1, 17). In his Response, Burk argues his constitutional claims are not brought under § 1983 or *Bivens*. (Doc. 89 at 4). But those are the available vehicles in which Burk may seek relief for violations of his constitutional

---

4. Padilla, however, should be dismissed under Rule 12(b)(6) while Individual Defendants should be dismissed under § 1915(e), which permits dismissal even if the defendants remain unserved. *Walters*, 2022 WL 2240467, at *4. Because courts perform a 12(b)(6) style analysis under § 1915(e), however, the analysis is the same for Padilla and Individual Defendants. *Id.* (citing *Davis* 35 F.4th at 962).

5. Burk also attempts to bring claims under 18 U.S.C. §§ 241, 242. (Doc. 1 at 8, 27–28, 31–32). Neither statute carries a private right of action. *Ali v. Shabazz*, 8 F.3d 22 (5th Cir. 1993) (per curiam). Thus, the Court will not discuss whether Burk has claims under them.

rights; he does not cite to any alternative. *Id.*; *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Section 1983 imposes liability for violations of rights protected by the Constitution. . . ."); *Hartman v. Moore*,  547 U.S. 250, 254 n.2 (2006) ("Though more limited in some respects not relevant here, a *Bivens* action is the federal analog to suits brought against state officials under [§ 1983]"). "[W]e have no federal general common law" that would allow Burk to sue for relief without anchoring his constitutional claims to *Bivens*, § 1983, or some other statutory authority. *Cantú v. Moody*, 933 F.3d 414, 420 n.2 (5th Cir. 2019); 13D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3573.2 (3d ed. 2025). The Court—bound to construe *pro se* filings liberally—will thus proceed in analyzing whether Burk's constitutional claims are brought under § 1983 or *Bivens*. *Johnson v. Ramos*, No. 18-CV-152, 2021 WL 3163846, at *2 (N.D. Tex. July 27, 2021) (internal quotations and citations omitted) ("Because *pro se* complaints are liberally construed, the courts apply § 1983 or *Bivens* according to the actual nature of the claims, not the label or characterization of a *pro se* plaintiff.").

Although Burk states he is a federal detainee, he also indicates in his pleading that he was held in a facility owned by Hudspeth County, a state entity. (Docs. 1 at 14; 17 at 12–13, 24–25). The Court is thus presented with the "thorny question" of whether "private companies managing county-owned prisons housing federal prisoners are proper § 1983 defendants. . . ." *Naranjo v. Thompson*, 809 F.3d 793, 806 n.16 (5th Cir. 2015). "Privately-operated detention center employees can act under the color of either state or federal law, because 'maintaining a jail may at times be both a federal and state function.'" *Walters*, 2022 WL 2240467, at *5 (quoting *Doe v. Neveleff*, No. 11-CV-907, 2013

6

WL 489442, at *14 (W.D. Tex. Feb. 8, 2013), *R.&R. adopted*, 2013 WL 12098684 (W.D. Tex. Mar. 12, 2013)). If Padilla and Individual Defendants were acting under color of state-law, Burk's constitutional claims are brought and analyzed under 42 U.S.C. § 1983. *Richardson v. McKnight*, 521 U.S. 399, 403 (1997). Conversely, "a person who acts under color of federal law . . . cannot be held liable under § 1983" and instead the claims must be analyzed under *Bivens*. *Walters*, 2022 WL 2240467, at *5 (citing *Butts v. Martin*, 877 F.3d 571, 588 (5th Cir. 2017)). For the reasons below, Burk's claims against Individual Defendants should be analyzed under *Bivens* and dismissed.

### A. Classifying Burk's Claims

Courts often analogize § 1983 and *Bivens* claims. *Butts*, 877 F.3d at 588 (quoting *Evans v. Ball*, 168 F.3d 856, 863 n.10 (5th Cir. 1999), *abrogated on other grounds*, *Castellano v. Fragozo*, 352 F.3d 939 (5th Cir. 2003)) ("[A] *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials."); *Espinal v. Bemis*, 464 F. App'x 250, 251 (5th Cir. 2012) ("This [C]ourt does not distinguish between *Bivens* claims and § 1983 claims."). But there are important differences between the two claims and the relief they provide to plaintiffs.

Under § 1983, employees at private prisons can act under color of state-law and be sued. *Rosborough v. Mgmt. & Training Corp.*, 350 F.3d 459, 461 (5th Cir. 2003) ("[P]rivate prison-management companies and their employees may be sued under § 1983 by a prisoner who has suffered a constitutional injury."); *Jenkins v. LaSalle Sw. Corr.*, No. 17-CV-1376, 2018 WL 3748196, at *7 (N.D. Tex. July 11, 2018) (citation

7

omitted) ("[P]rivate corporation[s] . . . may be sued under 42 U.S.C. § 1983 for alleged constitutional injury, because the operation of a prison is a fundamental government function."). Conversely, the Supreme Court held in *Minneci* that federal prisoners could not assert *Bivens* claims against employees of privately operated federal prisons and that instead "the prisoner must seek a remedy under state tort law." 565 U.S. at 131.

Courts have subsequently applied *Minneci* to bar *Bivens* claims involving private correctional employees violating constitutional rights. *Walters*, 2022 WL 2240467, at *7 (applying *Minneci* to hold "that [a prisoner] does not have a *Bivens* claim against [private employee defendants]. . . ."); *Rowland v. Sw. Corr., LLC*, No. 20-CV-847, 2021 WL 4206409, at *11 (E.D. Tex. Aug. 17, 2021) (citations omitted), *R.&R. adopted*, 2021 WL 4191433 (E.D. Tex. Sept. 15, 2021) ("Following *Malesko* and *Minneci*, private corporations and their employees generally cannot be held liable under *Bivens*."). This asymmetry makes the question of whether Individual Defendants were acting under color of state-law (where there is the possibility of a claim under § 1983) or federal law (where there is almost no possibility of a *Bivens* claim) fundamental to whether Burk can sue Individual Defendants for the deprivation of his constitutional rights. *Malesko*, 534 U.S. at 81 (Stevens, J., dissenting) ("[T]he Court's decision . . . creates asymmetry—between federal and state prisoners housed in private correctional facilities.").

To decide whether private employees were acting under color of state or federal law, courts often look to the private prison's contractual relationships. "Courts have found that privately-operated detention centers operate under color of state law when such facilities have a 'contractual relationship with the state.'" *Walters*, 2022 WL

2240467, at *5 (quoting *Fabian v. Dunn*, No. 08-CV-269, 2009 WL 2461207, at *6 (W.D. Tex. Aug. 6, 2009)). "Courts have also found that such facilities operate under color of federal law when in contract with the federal government." *Id.* (citing *Rowland*, 2021 WL 4206409, at *8–11 (collecting cases)). These rules do not help us here, as Burk claims LaSalle has a contractual relationship with both Hudspeth County and the federal government. (Doc. 17 at 12–13) (stating the WTDF is "owned by Hudspeth County" but also that LaSalle has "contracts to house Federal Inmates").

Courts have also increasingly answered the color of law question by looking to whether the plaintiff was a federal or state prisoner. *Tavares v. LaSalle Corr. Emerald Corr. Mgmt. W. Tex. Det. Ctr.*, No. 17-CV-289, 2018 WL 2452977, at *2 (W.D. Tex. May 31, 2018) ("At the time of his alleged assault, [the plaintiff] was being held in a private prison under the color of federal law. Therefore, instead of an action under § 1983, this Court will evaluate [the plaintiff's] claim under *Bivens*. . . ."); *see Sandoval v. Wackenhut Corr. Corp.*, 21 F.3d 1109, 1109 n.3 (5th Cir. 1994) (per curiam) (unpublished) (internal citation omitted) ("Because [the plaintiff] was a federal prisoner in the facility, which [private defendant] was under contract with the federal government to operate, his claims cannot be based on § 1983, because no state action was involved. Instead, his action is one under *Bivens*. . . ."). One court has gone so far as to state that "[i]t is well settled that private corporations who have contracted with the federal government to confine federal prisoners do not act under color of state law, and neither do their employees." *Smith v. Rolling Plains Det. Ctr.*, No. 20-CV-182, 2021 WL 6137159, at *3 (N.D. Tex.

July 7, 2021) (citations omitted), *R.&R. adopted*, 2021 WL 6135476 (N.D. Tex. Dec. 29, 2021).

This seems like a straightforward way to answer what has been described as a difficult question. But the fact that a plaintiff is a federal detainee may not be determinative standing alone, as "in *Henderson v. Thrower*, the Fifth Circuit permitted 'a federal prisoner' who 'was temporarily placed in the Mobile, Alabama city jail' pursuant to the contract between the city and the Federal Bureau of Prisons to proceed against various jail officials under § 1983." *Wright v. Martin*, 158 F.4th 286, 292 (1st Cir. 2025) (quoting *Henderson v. Thrower*, 497 F.2d 125–26 (5th Cir. 1974) (per curiam)). Moreover, "[c]ases . . . allowing section 1983 cases by federal prisoners against county or city employees, are legion." *Belbachir v. County of McHenry*, 726 F.3d 975, 978 (7th Cir. 2013) (citations omitted) (collecting cases).

Some courts in the Western District have applied this case law to find state action if the private prison had a contractual relationship with a state government, even when the plaintiff was a federal detainee. *Alvarez v. Geo Grp., Inc.*, No. 9-CV-0299, 2010 WL 743752, at *2 (W.D. Tex. Mar. 1, 2010) (finding "[the plaintiff's] status as a federal prisoner" did not "insulate[] [private entity defendant] from liability under section 1983 as a state actor" because private defendant had contractual relationship with the county to run private prison); *see Fabian*, 2009 WL 2461207, at *6 (citing *Gallien v. Corr. Corp.*, 91 F.3d 140 (5th Cir. 1996) (per curiam) (unpublished)) ("[A] private detention facility can be acting under color of state law if it operates and manages a state prison through a contractual relationship with the state."). The Fifth Circuit

10

appeared to take this approach in *Gallien*, an unpublished opinion, where it found "state action exist[ed]" and the plaintiff could bring a § 1983 claim "because [the private entity defendant] ha[d] contracted with the State of Texas to operate and manage prison facilities."[6] 91 F.3d at 140 n.1. Other courts have rejected this approach and there remains a "conflict within the Western District" on whether a contract with a state or municipal government creates sufficient state action. *Naranjo*, 809 F.3d at 806 n.16.

The Fifth Circuit partially dealt with this conflict in *Doe v. United States*, 831 F.3d 309 (5th Cir. 2016). There, the appellant cited *Henderson* and *Alvarez*—both cases in which a federal prisoner was allowed to bring a claim under § 1983—to argue the private employees of an immigrant detention facility whose employer had contracted with Williamson County had acted under color of state-law. *Id.* at 315. Rather than hold *Henderson* and *Alvarez* are bad law and that federal prisoners cannot bring claims under § 1983, the Court distinguished both cases because "[t]he state in both cases exhibited more control over the relevant correctional facilities. . . ." *Id.* at 316. In distinguishing *Alvarez*, for example, the Fifth Circuit stated "*Alvarez* involved a county-owned jail" and that the immigrant detention facility, in contrast, was "owned and operated by [the private entity] alone, not Williamson County or the state of Texas." *Id.* at 316–17. This would imply that in cases where the state exhibits greater control over the private prison—such as where the county owns the jail—state action may exist as to give rise to a claim under § 1983.

---

6. In *Gallien*, the plaintiff was a "Texas prisoner" but the finding of state action rested on the private prison having a contract with the state and not the custodial status of the prisoner. 91 F.3d at 140.

Foreclosing § 1983 claims by federal detainees against private entities with dual state and federal relationships leads to the "odd consequence of state prisoners being able to assert a claim that federal prisoners in the very same prison, run by the very same guards, could not raise." *Doe v. Neveleff*, No. 11-CV-907, 2013 WL 489442, at *13 (W.D. Tex. Feb. 8, 2013), *R.&R. adopted*, 2013 WL 12098684 (W.D. Tex. Mar. 12, 2013). This oddity has been on display in the LaSalle-managed Johnson County jail, which holds both state and federal detainees. *Compare Jenkins v. LaSalle Sw. Corrs.*, No. 17-CV-1376, 2018 WL 3748196, at *7–8 (N.D. Tex. July 11, 2018), *R&R adopted*, 2018 WL 3743945 (N.D. Tex. Aug. 7, 2018), *aff'd*, No. 20-10533, 2025 WL 66734 (5th Cir. Jan. 10, 2025) (unreported) (analyzing Texas prisoner's claims of constitutional deprivations at Johnson County Law Enforcement Center under § 1983); *with Ali v. Immigr. and Customs Enf't*, No. 16-CV-037, 2017 WL 4325785, at *4 (N.D. Tex. Aug. 29, 2017) (analyzing federal prisoner's claim of constitutional deprivations at Johnson County Law Enforcement Center under *Bivens* and citing *Minneci* to bar it).

The undersigned finds the answer is that—though not determinative in all circumstances—the custodial status of the detainee is determinative in whether the employees of a private prison were acting under color of state or federal law. Private facilities act under color of state-law when contracting with state government and federal law when contracting with the federal government. *Walters*, 2022 WL 2240467, at *5 (collecting cases). In holding Burk, a federal detainee, Padilla and Individual Defendants were acting pursuant to a contract with the federal government and fulfilling a purely federal function. *Tavares*, 2018 WL 2452977, at *2 (finding private

12

employee defendants acted under color of federal law because "[a]t the time of his alleged assault, [the plaintiff] was held in a private prison under color of federal law").

This approach also aligns with *Henderson* and the other cases that hold whether the plaintiff is a federal prisoner is not necessarily determinative in whether the detainee can bring a § 1983 claim. 497 F.2d at 125–26; *Belbachir*, 726 F.3d at 978. It is only determinative where a private entity has contractual relationships with both the state and federal government and fulfills both state and federal functions at a private facility. *Neveleff*, 2013 WL 489442, at *14 ("[M]aintaining a jail may at times be both a federal and state function. . . ."). In cases like *Henderson*, where detainees are held in a county-operated jail without a private entity's involvement, the jail staff would still act under color of state-law as the operators of a state owned and operated prison. *Doe*, 831 F.3d at 316 (citing *Henderson*, 497 F.2d at 126) (internal citations omitted) ("In *Henderson*, the jail was county owned and operated; it unequivocally derived its existence from the state. No private contractor was involved."). Privately operated prisons with contracts to hold federal detainees, by contrast, do not derive their existence purely from the state. *Id.*

Case law from this Circuit also overwhelmingly points towards treating the plaintiff's custodial status as determinative in whether employees of a private prison acted under color of federal or state-law. Cases from this District support this conclusion. *Tavares*, 2018 WL 2452977, at *2 (analyzing civil rights claim under *Bivens* instead of § 1983 because the plaintiff "was being held in a private prison under color of federal law"). Cases from neighboring districts support it as well. *Johnson*, 2021 WL 3163846, at *2 ("Federal courts routinely construe complaints brought by federal

13

prisoners alleging constitutional violations as *Bivens* claims."); *Ayala-Gutierrez v. Jackson*, No. 15-0387, 2016 WL 524225, at *1 (S.D. Tex. Feb. 9, 2016) (citation omitted), *aff'd sub nom.*, *Ayala-Gutierrez*, 697 F. App'x 285 (5th Cir. 2017) (unpublished) (analyzing federal detainee's claims under *Bivens* instead of § 1983 because the plaintiff was a federal prisoner held in a private federal prison); *Rowland*, 2021 WL 4206409, at *11 (finding the plaintiff "cannot assert a claim under § 1983" against a private prison's employees because he was "a federal pre-trial detainee held on federal charges"). District courts in other circuits have likewise treated the plaintiff's custodial status as determinative. *Rowland*, 2021 WL 4206409, at *10 n.14 (collecting cases from other districts).

Finally, in a series of recent unpublished opinions, the Fifth Circuit appears to have taken this approach. In *Ayala-Gutierrez v. Doe*, a federal detainee argued that he had a claim under § 1983 because the private corporation derived its ability to operate the detention facility from the state of Texas. 697 F. App'x at 286 (citing *Eltayib v. Cornell Companies, Inc.*, 533 F. App'x 414 (5th Cir. 2013)). The Fifth Circuit rejected this argument and analyzed the detainee's constitutional claims under *Bivens*, reasoning that "GEO [the private prison corporation] and their employees are not subject to state actors under § 1983 because they manage a federal prison. . . ." *Id.* The Fifth Circuit reached this conclusion even though the private corporation, GEO, also had a contractual relationship with Montgomery County, Texas, with respect to management of the private facility. *Rowland*, 2021 WL 4206409, at *8 (citations omitted) (discussing the Fifth Circuit's holding in *Ayala-Gutierrez* and GEO's contractual relationships). Thus,

14

the vast weight of authority points toward treating Individual Defendants as having acted under color of federal law.

There are still problems with this approach. The issue of prisoners with the same constitutional rights being held in the same facility, staffed by the same guards, not being able to assert the same claims for deprivations of their constitutional rights is still present. *Neveleff*, 2013 WL 489442, at *13. Here, for example, part of Burk's claims involve allegations that the guards at the WTDF tossed non-lethal explosives in the holding cells. (Doc. 1 at 27–28). If both state and federal detainees shared the cell, were the guards acting under color of state-law when injuring the state detainees and federal law when injuring Burk? Unfortunately, these questions are simply the reality of the Supreme Court's choice to bifurcate the relief available in *Bivens* and § 1983 claims. *Malesko*, 534 U.S. at 81–82 (Stevens, J., dissenting) (internal quotations and citations omitted) ("Under 42 U.S.C. § 1983, a state prisoner may sue a private prison for deprivation of constitutional rights, yet the Court denies such a remedy to that prisoner's federal counterpart. . . . The Court . . . has recognized sound jurisprudential reasons for parallelism, as different standards for claims against state actors would be incongruous and confusing.").

Even if this Court finds Burk's status as a federal detainee is not determinative, Burk's Complaint appears to sue Individual Defendants as federal actors. (Doc. 1 at 30) (stating that employees of LaSalle were "operating as . . . contractor[s] for and under federal jurisdiction, caring for federal inmates"). Courts have previously applied *Bivens* if the plaintiff identifies the defendants as federal actors and there is doubt as to

15

whether *Bivens* or § 1983 applies. *Walters*, 2022 WL 2240467, at *7 ("Based on the information provided in [the plaintiff's] Complaint, the Court finds that Defendants behaved as federal, not state, actors at the time of the alleged incidents."); *Webb v. McQuade*, No. 21-CV-254, 2022 WL 136464, at *4 (W.D. Tex. Jan. 14, 2022) (applying *Bivens* instead of § 1983 because the plaintiff did "not provide[] the Court sufficient information to indicate if Defendants were behaving as state actors at the time of the alleged incidents").

Burk's pleading overwhelmingly characterizes the WTDF as a federal facility. (Doc. 1 at 14) (referring to LaSalle's "contracts to hold and maintain Federal Detainees"); *id.* at 22 (stating the WTDF is owned by LaSalle and "under contract of the U.S. Department of Justice"); (Doc. 17 at 25) (stating LaSalle is "direct contract holders for the care and wellbeing of Federal inmates" and referring to himself as a federal inmate). Accordingly, this Court should find that Padilla and Individual Defendants acted under color of federal law and analyze Burk's claims under *Bivens*.

### B. Burk's *Bivens* Claims

Burk does not have *Bivens* claims against Padilla and Individual Defendants. "In *Ziglar v. Abbassi*, the Supreme Court recognized only three valid *Bivens* [claims]." *Tavares*, 2018 WL 2452977, at *3 (citing *Ziglar v. Abbassi*, 582 U.S. 120, 130–32 (2017)). "Outside of these three unique circumstances, the Supreme Court views new *Bivens* claims with disfavor." *Id.* (citing *Ziglar*, 582 U.S. at 135); *see Oliva v. Nivar*, 973 F.3d 438, 440–41 (5th Cir. 2020) (internal quotations and citation omitted) ("[T]o put it mildly, extending *Bivens* to new contexts is a disfavored judicial activity.").

16

Beginning with Burk's excessive force and medical care claims, Burk asserts a deprivation of his Eighth Amendment rights. (Doc. 1 at 8, 15–21). Burk, however, was a pretrial detainee when these events occurred and thus his claims are brought under the Fifth Amendment's Due Process Clause. (Docs. 1 at 14; 17 at 25); *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979) (holding that a pretrial detainee's constitutional claims are considered under the Due Process Clause). Courts have found similar excessive force and deliberate indifference claims from pretrial detainees to be new *Bivens* claims and dismissed them. *Tavares*, 2018 WL 2452977, at *3 (interpreting pretrial detainee's excessive force claim as being brought under the Fifth Amendment and finding it was a new *Bivens* claim); *Walters*, 2022 WL 2240467, at *6–7 (interpreting pretrial detainee's deliberate indifference to medical needs claim as being brought under the Fifth Amendment and finding it was a new *Bivens* claim).

Courts have also treated similar missed meals, interference with mail, and access to courts claims as new *Bivens* claims and dismissed them. *Dancy v. Watson*, No. 19-CV-426, 2020 WL 1139422, at *3 (S.D. Ind. Mar. 9, 2020) (missed meals); *Zavala v. Rios*, 721 F. App'x 720, 721–22 (9th Cir. 2018) (interference with prison mail); *Vega v. United States*, 881 F.3d 1146, 1152–54 (9th Cir. 2018) (access to courts). Burk's failure-to-report allegations similarly present a new context than the three recognized *Bivens* categories and should be considered as involving a new *Bivens* claim. *Oliva*, 973 F.3d at 440–42.

"New *Bivens* claims are unavailable if there are special factors counseling hesitation in the absence of affirmative action by Congress or if there are alternative, existing processes for relief." *Tavares*, 2018 WL 2452977, at *3 (internal quotations and

17

citations omitted). Courts have been reluctant to extend *Bivens* to claims brought against privately employed individuals acting under color of federal law, finding there are existing processes for relief under state tort law. *Rowland*, 2021 WL 4206409, at *11 (citations omitted) ("Following *Malesko* and *Minneci*, private corporations and their employees generally cannot be held liable under *Bivens*."); *Villanueva v. United States*, No. 19-CV-232, 2020 WL 1234943, at *8 (W.D. Tex. Mar. 13, 2020) ("The Supreme Court has declined to extend *Bivens* to claims brought against privately employed individuals working in federal prisons."). This Court should follow this long line of case law and decline to extend *Bivens* to Burk's constitutional claims. *Walters*, 2022 WL 2240467, at *10 (declining to extend *Bivens* to deliberate indifference claim because the plaintiff had an adequate alternative remedy under Texas state tort law); *Tavares*, 2018 WL 2452977, at *3 (holding the same for a detainee's excessive force claim). Accordingly, the undersigned **RECOMMENDS** that the Court **DISMISS** Burk's constitutional claims against Padilla under Rule 12(b)(6) and against Individual Defendants under 28 U.S.C. § 1915(e).

## II.    Claims Against LaSalle

Burk makes similar constitutional claims against LaSalle, the private corporate entity that operates the WTDF. (Doc. 17 at 14). "[T]he Court finds that [Burk's] *Bivens* claims against Defendant LaSalle are barred by *Correctional Services Corp. v. Malesko*, 534 U.S. 61 (2001)." *Walters*, 2022 WL 2240467, at *8. "In *Malesko*, the Supreme Court clearly held that the Supreme Court's prior decision in *FDIC v. Meer*, 510 U.S. 471 (1994) 'forecloses the extension of *Bivens* to private entities.'" *Id.* (quoting *Malesko*, 534 U.S. at 66 n.2). LaSalle is a private entity and therefore cannot be held liable under *Bivens*. *Id.*

18

The undersigned therefore **RECOMMENDS** that any *Bivens* claims against LaSalle be dismissed under Rule 12(b)(6).

### III.     State-law Claims

To the extent Burk has any remaining state-law claims against Padilla, Individual Defendants, or LaSalle, the Court should dismiss them under 28 U.S.C. § 1367. If this Court dismisses Burk's civil rights claims, all that will remain are his assertions of negligence and malpractice. (Docs. 1 at 40; 17 at 7–8, 15). In this Circuit, "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial. . . ." *Brookshire Bros. Holding, Inc. v. Dayco Products, Inc.*, 554 F.3d 595, 602 (5th Cir. 2009) (citation omitted); *Walters*, 2022 WL 2240467, at \*10 (declining to exercise jurisdiction over state-law negligence claims after recommending dismissal of the plaintiff's constitutional claims). The Court should follow that rule here. Accordingly, if the Court follows the undersigned's recommendation and dismisses Burk's civil rights claims, the undersigned also **RECOMMENDS** that the Court **DECLINE TO EXERCISE JURISDICTION** over any state-law claims Burk asserts.

### IV.     Leave to Amend

Ordinarily, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (citation omitted). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Id.* "If the prisoner has filed his complaint and submitted questionnaire responses, then the court may conclude that he has pleaded his

19

best case such that granting him further leave to amend would be futile or cause unnecessary delay." *Clark v. Waddell*, No. 22-CV-59, 2023 WL 8605313, at *18 (N.D. Tex. Nov. 15, 2023) (citations omitted). Here, Burk has filed a long and detailed complaint, submitted questionnaire responses, and filed more definite statements. (Docs. 1, 15, 17, 26, 33, 34). Accordingly, the undersigned **RECOMMENDS** that the Court find Burk has pleaded his best case and **DISMISS WITH PREJUDICE** his claims against LaSalle, Padilla, and Individual Defendants without granting leave to amend.

### CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that LaSalle and Padilla's Motion to Dismiss be **GRANTED** and that Burk's claims against LaSalle and Padilla be **DISMISSED WITH PREJUDICE**. (Doc. 61). The undersigned further **RECOMMENDS** that Burk's claims against Individual Defendants be **DISMISSED WITH PREJUDICE** under § 1915(e). The undersigned further **RECOMMENDS** that the Court decline to exercise supplemental jurisdiction over any possible state-law claims. The undersigned finally **RECOMMENDS** that Burk not be given leave to amend his Complaint.

SIGNED this 20th day of January, 2026.

DAVID B. FANNIN
UNITED STATES MAGISTRATE JUDGE

20

**INSTRUCTIONS FOR SERVICE AND RIGHT TO APPEAL/OBJECT**

In the event that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is **ORDERED** to mail such party a copy of this Report and Recommendation **by certified mail, return receipt requested**. Pursuant to 28 U.S.C. § 636(b), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made; the District Court need not consider frivolous, conclusive, or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the Magistrate Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a de novo determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).